MOEEL LAH FAKHOURY LLP
Hanni M. Fakhoury (State Bar No. 252629)
2006 Kala Bagai Way, Suite 16
Berkeley, CA 94704
Telephone: (510) 500-9994
Email: hanni@mlf-llp.com

Attorneys for Jessy Banegas-Barahona

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESSY BANEGAS-BARAHONA,<br><br>Defendant. | Case Nos.: 3:24-CR-00577-RFL-3<br><br>**DEFENDANT'S SENTENCING MEMORANDUM, MOTION FOR DOWNWARD VARIANCE AND OBJECTION TO THE PRESENTENCE INVESTIGATION REPORT**<br><br>Court: Courtroom 15, 18th Floor<br>Hearing Date: March 27, 2025<br>Hearing Time: 2:00 p.m. |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

STATEMENT OF FACTS .............................................................................................................. 1

    A.    Ms. Banegas-Barahona's History and Characteristics. ....................................................... 1

    B.    Nature and Circumstances of the offense. ......................................................................... 2

    C.    Ms. Banegas-Barahona's future plans. .............................................................................. 3

SENTENCING ARGUMENT ........................................................................................................ 3

    A.    Seriousness of the Offense, Respect for the Law and Just Punishment............................ 3

    B.    Deterring Criminal Conduct and Protecting the Public. ................................................... 4

    C.    Providing Training, Medical Care or Other Treatment. ................................................... 5

    D.    The Guidelines Sentencing Range. .................................................................................. 5

    E.    Avoiding Unwarranted Sentencing Disparities. ............................................................... 6

OBJECTIONS TO THE PSR ......................................................................................................... 8

CONCLUSION .............................................................................................................................. 9

# TABLE OF AUTHORITIES

## Cases

*Gall v. United States*, 552 U.S. 38 (2007) ................................................................................. 3, 4, 6

*Kennedy v. Louisiana*, 554 U.S. 407 (2008) ...................................................................................... 4

*Pepper v. United States*, 562 U.S. 476 (2011) ................................................................................... 6

*Tapia v. United States*, 564 U.S. 319 (2011) ..................................................................................... 3

*United States v. Amezcua-Vasquez*, 567 F.3d 1050 (9th Cir. 2009) ................................................... 6

*United States v. Bad Marriage*, 392 F.3d 1103 (9th Cir. 2004) ........................................................ 5

*United States v. Barker*, 771 F.2d 1362 (9th Cir. 1985) .................................................................... 3

*United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) (en banc) ....................................................... 3

*United States v. LaCoste*, 821 F.3d 1187 (9th Cir. 2016) .................................................................. 8

*United States v. Wolf Child*, 699 F.3d 1082 (9th Cir. 2012) ............................................................. 9

*Williams v. New York*, 337 U.S. 241 (1949) ...................................................................................... 3

## Statutes

18 U.S.C. § 3553 ......................................................................................................................... 3, 5, 6

18 U.S.C. § 3582 ................................................................................................................................ 5

**INTRODUCTION**

Jessy Banegas-Barahona stands before this Court to be sentenced for the first time in her life, following her first arrest and first conviction, and awaiting her first deportation. She has spent more than four months in jail—the first time she has ever been incarcerated—thinking about the poor decisions that bring her to this moment. She is remorseful and understands now, more than before, the dangers of fentanyl and the havoc it wreaks.

The government and the probation office both recommend a downward variance from the Guidelines range, asking the Court to impose an 18 month sentence. That recommendation is driven, in part, by Ms. Banegas-Barahona's minor role in the offense and her lack of criminal history.

Ms. Banegas-Barahona agrees with the government and probation office that a downward variance is warranted, but respectfully requests the Court impose a sentence of credit for time served plus one day in jail. Ultimately, the difference between Ms. Banegas-Barahona's requested sentenced and the one proposed by the government and probation office is approximately ten months when accounting for good time credit.

Ms. Banegas-Barahona has been punished enough when the Court considers the fact that she is not just a zero-point offender but someone who, unlike many of the drug trafficking defendants routinely charged in the Northern District, has never been arrested before. It is justified by the mitigating factors in her background including her challenging upbringing in one of the poorest countries in the world. And it is justified by her impending removal to Honduras where she will struggle once again struggle to survive knowing that a life in the United States is not possible.

An additional ten months in jail is an unnecessary use of government resources and not needed to punish or deter Ms. Banegas-Barahona or any other person from selling drugs. Because there is no need to delay her guaranteed removal from this country, she respectfully requests this Court impose a sentence of time served plus one day in jail. She also asks this Court to strike proposed supervised release special condition 1.

**STATEMENT OF FACTS**

A.   **Ms. Banegas-Barahona's History and Characteristics.**

Ms. Banegas-Barahona was born in Honduras in 1993. PSR ¶ 39. Her parents separated when

she was young and she was raised primarily by her mother. PSR ¶ 39. She did not regularly see her father and he did not financially support the family. PSR ¶ 39. Her mother had relationships with other men, at least one of whom was verbally abusive and aggressive towards her. PSR ¶ 40. Though she graduated high school, she had a hard time finding meaningful work in Honduras.

After struggling for almost a decade in Honduras, Ms. Banegas-Barahona came to the United States in 2022, when she was 29 years old. PSR ¶ 41. She first settled in Indiana where she worked as a painter. She then came to San Francisco, where her sisters and niece lived, and ended up in a small apartment with several other people in the East Bay, supporting herself by preparing Honduran food to resell.

B.   **Nature and Circumstances of the offense.**

In February 2024 DEA agents began communicating with a woman they believed could sell them fentanyl. PSR ¶ 8. That woman was Cristel Cruz-Banegas, Ms. Banegas-Barahona's niece. An undercover DEA agent arranged a drug sale with Cristel but did not arrest her. PSR ¶ 9. In April, San Francisco police arrested Cristel for selling drugs in the Tenderloin neighborhood and she was booked into the San Francisco County jail. PSR ¶ 10. While she was in jail, the DEA undercover agent attempted to arrange another drug sale with Cristel by contacting her cell phone. The agents did not know that Cristel was incarcerated. PSR ¶ 11. The agent received a message from someone else claiming to be Cristel who agreed to arrange the drug sale. PSR ¶ 12.

On April 22, 2024, the undercover agent drove to San Leandro and met with two women: Cesia Ramirez-Barahona and her sister, Ms. Banegas-Barahona. Cesia explained to the undercover agent that he had been communicating with her and proceeded to negotiate the terms of the drug sale with the agent. PSR ¶ 13. Ms. Banegas-Barahona was present during the sale, holding the bag that contained the fentanyl, but otherwise did not negotiate with the undercover agent. PSR ¶ 13. After the sale was completed, the DEA did not negotiate or buy any other drugs from Ms. Banegas-Barahona.

She was ultimately arrested on November 19, 2024. PSR ¶ 14. She was ordered detained on November 26, 2024 and quickly pleaded guilty to the sole charge filed against her in the indictment on January 10, 2025. PSR ¶¶ 1-5.

C. **Ms. Banegas-Barahona's future plans.**

Ms. Banegas-Barahona has remorse for her actions that will result in her removal from this country. She has spent more than four months in jail thinking about what her life will look like when she returns to Honduras, knowing she will be unable to return to this country. She plans to reconnect with her mother and her partner and look for work. And she plans to be a doting aunt and take care of her soon to be born nephew. Her sister Cesia, who is housed in the same cell as Ms. Banegas-Barahona at Santa Rita jail, is pregnant. The family plans to have Ms. Banegas-Barahona care for her nephew in Honduras until Cesia is released.

## SENTENCING ARGUMENT

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). That requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quotations omitted). The factors detailed in 18 U.S.C. § 3553(a) assist the Court in fulfilling this mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). The sentence recommended in the Sentencing Guidelines is only one factor for district courts to consider in making this judgment, and it may not be weighed more heavily than any other § 3553(a) factor. *Gall*, 552 U.S. at 50; *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).

All parties agree that a downward variance from the advisory Guideline range is appropriate here. Ms. Banegas-Barahona respectfully requests this Court sentence her to credit for time served plus one day, effectively a sentence ten months shorter than the 18 month sentence recommended by both the government and the probation office.

A. **Seriousness of the Offense, Respect for the Law and Just Punishment.**

The Supreme Court has explained the factors in § 3553(a)(2)(A)—the seriousness of the offense," the need "to promote respect for the law" and "provide just punishment for the offense"— are the sentencing rationale of "retribution." *See Tapia v. United States*, 564 U.S. 319, 326 (2011) ("a

DEFENDANT'S SENTENCING MEMORANDUM, MOTION FOR DOWNWARD VARIANCE AND PSR OBJECTIONS
*United States v. Banegas-Barahona*, 3:24-CR-00577-RFL-3

3

court may not take account of retribution (the first purpose listed in 3553(a)(2)) when imposing a term of supervised release") (emphasis omitted). "The goal of retribution" is the "interest[] in seeing that the offender is repaid for the hurt he caused." *Kennedy v. Louisiana*, 554 U.S. 407, 442 (2008). Yet, the Supreme Court has warned "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, 552 U.S. at 54 (quotations omitted).

Ms. Banegas-Barahona acknowledges her mistakes and accepts she must be punished. At the same time, however, "the real conduct and circumstances" here require the Court account for Ms. Banegas-Barahona' challenging upbringing in a poor country, and recognize that lack of opportunity played a role in bringing her to this country and before the Court for sentencing.

That upbringing and her lack of criminal history means that the sentencing goal of "just punishment" will be accomplished by a sentence of credit for time served plus one day for the more than four months she has served in jail. In addition, Ms. Banegas-Barahona knows there will also be significant collateral consequences from her actions, including her inevitable deportation to Honduras and the inability to ever return to the United States legally. Thus, there is no need to impose a sentence longer than time served plus one day.

**B.   Deterring Criminal Conduct and Protecting the Public.**

This is Ms. Banegas-Barahona's first conviction and before this case, she had never been arrested or spent a night in jail. Having been convicted of an "aggravated felony" under immigration law, she will certainly be deported to Honduras as soon as she finishes her criminal sentence, when she will be transferred into immigration custody. Given the current Administration's aggressive focus on enforcing immigration law and removing people unlawfully (and in some cases lawfully) living in the country, the time Ms. Banegas-Barahona will spend in immigration custody will be much harsher than the conditions of confinement she is currently facing at Santa Rita jail, a place that in and of itself is a challenging place to be incarcerated.

Nor is a sentence longer than the more than four months she has already served necessary to deter Ms. Banegas-Barahona from selling drug again. The difficult time she has spent in jail and the

collateral consequences stemming from her conviction are enough to ensure Ms. Banegas-Barahona will never sell drugs again.

As for general deterrence, the scores of drug trafficking defendants sentenced in the Northern District—noted in more detail below—to significantly shorter sentences for similar conduct demonstrate that a sentence longer than time served is unnecessary. Stated differently, the mere fact of federal as opposed to state prosecution of drug traffickers is enough of a general deterrent, and suggests that even the government itself believes a lengthy jail sentence is unnecessary to convince other people to not sell drugs, especially if it carries the threat of removal and deportation from the United States.

C. **Providing Training, Medical Care or Other Treatment.**

The "purposes of sentencing include not only punishment and deterrence, but also the provision of treatment to a defendant in need of it." *United States v. Bad Marriage*, 392 F.3d 1103, 1114 (9th Cir. 2004) (citing 18 U.S.C. § 3553(a)(2)(D)). Congress has cautioned courts to recognize that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Instead, Congress has directed district courts to consider "the most effective manner" to provide a defendant with "correctional treatment." 18 U.S.C. § 3553(a)(2)(D).

Ms. Banegas-Barahona is not in need of mental health or drug treatment and given her immigration status and inability to speak English, would not receive such services in the BOP anyway. Thus, there is no need to impose a sentence longer than time served plus one day for Ms. Banegas-Barahona to receive treatment.

D. **The Guidelines Sentencing Range.**

Ms. Banegas-Barahona does not object to the advisory Sentencing Guidelines range detailed in the PSR, which matches the plea agreement, and which concludes the adjusted offense level is 19, Ms. Banegas-Barahona is a zero-point offender in criminal history category I, and the advisory Guideline range is 30-37 months. PSR ¶¶ 4, 26, 29, 34, 54; Dkt. 37, Plea Agreement at 5, ¶ 7(e).

But the Supreme Court has made clear that the ranges recommended by the Sentencing Guidelines are neither mandatory nor presumptively reasonable. Instead, at sentencing courts have an "overarching duty" to "'impose a sentence sufficient, but not greater than necessary'" to comply with

the sentencing factors in 18 U.S.C. § 3553(a). *Pepper v. United States*, 562 U.S. 476, 491 (2011) (quoting § 3553(a)).

Considering Ms. Banegas-Barahona's limited role in the offense, the fact this is her first time she has found herself arrested, convicted, and incarcerated, and that she will be removed to Honduras when she completes her sentence, a variance from the Guidelines range as recommended by all parties is appropriate here. Ms. Banegas-Barahona asks this Court to sentence her to credit for time served plus one day.

E.   **Avoiding Unwarranted Sentencing Disparities.**

While the Court must avoid unwarranted sentencing disparities among defendants with similar records convicted of similar conduct, the Ninth Circuit has explained sentencing courts must also "avoid 'unwarranted similarities among [defendants] who were not similarly situated.'" *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1058 (9th Cir. 2009) (quoting *Gall,* 552 U.S. at 55 (emphasis and brackets in original)); *see also* 18 U.S.C. § 3553(a)(6).

A time served sentence of more than four months is longer than the sentences imposed for the multitude of defendants engaged in drug sales, primarily in the Tenderloin, prosecuted in the Northern District. Indeed, numerous defendants convicted of similar drug trafficking conduct as Ms. Banegas-Barahona with similar (and in some cases, higher) advisory Sentencing Guideline ranges— including defendants with numerous prior arrests, convictions, and deportations—have received sentences under the "fast track" program far shorter than the more than four months served by Ms. Banegas-Barahona.

| Name | Case | Drug quantity | AOL | CHC | USSG Range | Sentence | Custody | Notes |
|---|---|---|---|---|---|---|---|---|
| Jose Reanos-Soriano | 23-392-CRB | 71g fentanyl, 14g heroin | 19 | I | 30-37 | Time served | <1 month | |
| Santo Bustillo | 24-183-RFL | 15g fentanyl, 27g cocaine base, 29g meth | 19 | I | 30-37 | Time served + 1 day | <1 month | |
| Gerson Santos Zelaya | 24-203-VC | 92g fentanyl, 15g meth | 19 | I | 30-37 | Time served + 1 day | <1 month | |
| Miguel Jessy Grajeda Varela | 23-407-TLT | 30g meth, 197g fentanyl, 145g cocaine base, 133g heroin, 42g cocaine base, 177g counterfeit pills | 23 | I | 46-57 | Time served | <1 month | |
| Roby Mauricio Aguilera Mondragon | 23-433-VC | 9g fentanyl, 10g cocaine base, 4g cocaine, 5g heroin | 21 | I | 37-46 | Time served + 1 day | 5 weeks | On bail awaiting sentencing in SF Superior @ time of federal arrest |
| Rene Tome Cruz | 24-111-MMC | 44g meth, 11g cocaine base, 75g fentanyl | 21 | II | 41-51 | Time served + 1 day | 5 weeks | Two prior convictions, one for drug trafficking |

DEFENDANT'S SENTENCING MEMORANDUM, MOTION FOR DOWNWARD VARIANCE AND PSR OBJECTIONS
*United States v. Banegas-Barahona*, 3:24-CR-00577-RFL-3

| Name | Case No. | Drugs | Offense Level | Criminal History | Guidelines Range | Sentence | Supervised Release | Notes |
|---|---|---|---|---|---|---|---|---|
| Norlan Josue Rodriguez-Casco | 23-401-VC-1 | 60g fentanyl, 3g heroin, 149g alprazolam | 21 | III | 46-57 | Time served + 1 day | 5 weeks | Prior deportation, convictions for drug sales, assault |
| Reny Javier Gamez-Diaz | 23-401-VC-2 | 48g fentanyl | 19 | I | 30-37 | Time served + 1 day | 2 weeks | |
| Kevin Alexander Garcia-Diaz | 23-401-VC-3 | 205g fentanyl, 9g meth, 18g cocaine base, 4g heroin, 143g alprazolam | 23 | II | 51-63 | Time served + 1 day | 2 weeks | |
| Erlin Hernandez Flores | 23-309-TLT | 579g fentanyl, 7g cocaine base, 11g meth, 6g heroin | 23 | I | 46-57 | Time served | 5 weeks | Arrested in another district |
| Gabriela Estrada | 23-453-MMC | 41g fentanyl, 10g meth, 17g cocaine, 33g heroin | 19 | I | 30-37 | Time served + 1 day | 3 weeks | |
| Juan Carlos Zapata Pena | 24-018-VC | 36g fentanyl, 29g meth, 26g cocaine base | 21 | I | 37-46 | Time served + 1 day | <1 month | Prior arrest and conviction for drug trafficking |
| Elmer Avila Montes | 23-432-TLT | 15g fentanyl, 10g cocaine base, 15g heroin | 21 | I | 37-46 | Time served | <2 months | Prior arrest and conviction for drug trafficking |
| Luis Banegas-Barahona Aguilar | 23-427-JSC | 30g meth, 47g fentanyl | 19 | I | 30-37 | Time served + 1 day | 5 weeks | |
| Kenneth Steven Grandez-Meraz | 23-488-EMC | 65g fentanyl | 19 | I | 30-37 | Time served | 1 month | Federal arrest occurred after skipping bail in state drug trafficking case |
| Luis Alonzo Zuniga-Cruz | 23-391-VC | 342g fentanyl, 28g meth, 18g cocaine base, 3g heroin | 23 | I | 46-57 | Time served + 1 day | <1 month | |
| Kevin Maudiel Martinez-Rivas | 23-369-CRB | 76g meth, 316g fentanyl, 10g cocaine base | 23 | I | 46-57 | Time served + 1 day | 1 month | |
| Eydan Reinel Arteaga-Colindres | 23-400-SI | 15g cocaine base, 2g meth | 10 | III | 10-16 | Time served | 5 weeks | Three prior illegal entry convictions including BOP sentence |
| Carlos Alberto Rivera | 23-395-TLT | 52g fentanyl, 56g cocaine base, 52g meth, 3g heroin | 19 | I | 30-37 | Time served | <1 month | |
| Jesus Samaiel Erias-Gamez | 23-394-EMC | 94g fentanyl, 2g cocaine base, 1g heroin | 19 | I | 30-37 | Time served | <2 months | Seven prior drug arrests, previously deported |
| William Herberto Zuniga-Ramirez | 23-379-EMC | 95g fentanyl, 22g meth, 19g heroin, 86 alprazolam | 21 | I | 37-46 | Time served + 1 day | <1 month | |
| Henrry Alfredo Barahona | 23-441-CRB | 32g meth, 25g fentanyl | 19 | III | 37-46 | Time served + 3 days | 5 weeks | Three prior convictions |
| Jessy Humberto Turcios-Cortez | 23-278-CRB-1 | 346g fentanyl, 30g meth | 25 | I | 57-71 | Time served + 1 day | 2 weeks | |
| Kevin Garcia-Raudales | 23-376-CRB | 134g fentanyl, 12g meth, 3g cocaine, 23g cocaine base | 19 | I | 30-37 | Time served + 1 day | 1 month | |
| Mainor Javier Mendoza-Cruz | 23-370-JSC | 220g meth, 225g fentanyl, 10g cocaine, 53g heroin, 68g cocaine base, 13g alprazolam | 23 | I | 46-57 | Time served + 1 day | <1 month | Seven prior drug arrests |
| Jairo Mendoza | 23-382-JSC-1 | 95g fentanyl, 44g heroin, 32g cocaine | 19 | I | 30-37 | Time served + 1 day | 2 weeks | Pending state case at time of federal incident |
| Nelson Antonio Guzman | 23-382-JSC-2 | 49g fentanyl, 55g meth, 11g heroin, 7g cocaine base, 14g cocaine | 21 | I | 37-46 | Time served + 1 day | 2 weeks | Prior misdemeanor illegal entry conviction; multiple removals |
| Edgar Josue Irias Perez | 23-319-CRB-2 | 399g fentanyl | 25 | I | 57-71 | Time served + 1 day | 6 weeks | |
| Alex David Cuevas-Aguilar | 23-362-CRB | 18g fentanyl analogue, 13g heroin, 11g cocaine, 19g cocaine base | 21 | I | 37-46 | Time served + 1 day | 3 weeks | Two prior drug trafficking arrests |
| Orlin Bonilla | 23-344-SI-1 | 91g fentanyl, 44g cocaine, 48g heroin, 58g meth | 19 | I | 30-37 | Time served | 3 weeks | Prior immigration exclusion from US |

DEFENDANT'S SENTENCING MEMORANDUM, MOTION FOR DOWNWARD VARIANCE AND PSR OBJECTIONS
*United States v. Banegas-Barahona*, 3:24-CR-00577-RFL-3

| Marcus Ambruso | 23-344 SI-2 | 1.3K combined fentanyl, meth, heroin | 25 | I | 57-71 | Time served | 3 weeks | Prior drug trafficking case resulting in diversion |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Pedro Melendez-Soto | 23-322-EMC | 115g meth, 539g fentanyl, 2g cocaine base | 29 | I | 87-108 | Time served + 1 day | <2 months | |
| Candy Celeste Zuniga Cardona | 23-252-CRB | 148g fentanyl, 52g heroin, 53g cocaine base, 59g meth | 23 | I | 46-57 | Time served + 1 day | <1 month | |
| Pedro Martinez Montes | 23-314-CRB | 53g cocaine, 63g cocaine base, 61g heroin, 77g meth | 21 | I | 37-46 | Time served + 1 day | 2 weeks | Prior conviction and prior drug trafficking arrest |
| Marcio Jossel Cruz | 24-182-CRB | 58g fentanyl, 59g meth, counterfeit M30 pills | 19 | I | 30-37 | Time served + 1 day | 1 month | Prior drug trafficking arrests |
| Kevin Josiel Ruiz-Antunez | 24-202-TLT | 12g meth, 15g fentanyl, 12g cocaine base, 3g heroin | 17 | I | 24-30 | Time served + 1 day | 5 weeks | Prior misdemeanor conviction |

Even if the Court believes Ms. Banegas-Barahona should be distinguished from other "fast track" defendants because she did not engage in a hand to hand sale of a small amount of drugs, a time served sentence would accomplish that because the more than four months she has spent in custody is three to four times longer than the sentences cited above, which ranged from two to six weeks in custody.

## **OBJECTIONS TO THE PSR**

Ms. Banegas-Barahona objects to proposed supervised release special condition 1, barring her from contacting her co-defendants in the case, including Cesia Ramirez-Barahona.

Although "District judges enjoy broad discretion in fashioning" supervised release conditions, "Congress has nonetheless set limits on the exercise of that discretion." *United States v. LaCoste*, 821 F.3d 1187, 1190 (9th Cir. 2016). There are "three primary constraints" on imposition of supervised release conditions. *Id.* The condition must (1) "be reasonably related to the nature and circumstances of the offense; the history and characteristics of the defendant; or the sentencing-related goals of deterrence, protection of the public, or rehabilitation;" (2) be consistent with the Sentencing Commission's policy statements; and (3) must involve "no greater deprivation of liberty than is reasonably necessary to serve the goals of supervised release." *Id.* at 1190-91 (quotations and citations omitted).

When "a supervised release condition targets a defendant's right to associate with an intimate family member, the district court must undertake an individualized review on the record of the relationship between the defendant and the family member at issue to determine whether the

restriction is necessary to accomplish the goals of deterrence, protection of the public, or rehabilitation." *United States v. Wolf Child*, 699 F.3d 1082, 1090 (9th Cir. 2012) (quotations and citations omitted). This "enhanced procedural requirement" is necessary because "the fundamental right to familial association is a particularly significant liberty interest." *Id.* at 1092.

Here, notwithstanding the fact that Ms. Banegas-Barahona will be deported, a supervised release condition restricting her from associating with her sister—or her co-defendant niece, Cristal, for that matter—is unnecessary to further the goals of deterrence, protecting the public or rehabilitation. As explained above, Ms. Banegas-Barahona's time in custody and removal to Honduras has already deterred her and she is no threat to the public. Nor is separation from her sister needed to further the goals of rehabilitation because Ms. Banegas-Barahona does not suffer from drug addiction or mental illness.

The proposed condition is also problematic because it is absolute: the condition does not even provide an opportunity for Ms. Banegas-Barahona to communicate with her sister provided the probation office approves the communication in advance. *See Wolf Child*, 699 F.3d at 1095 ("the fact that a defendant is able to engage in certain types of activities with permission from a probation officer, as opposed to being prohibited entirely from engaging in those activities, might justify a finding that a narrowly tailored condition infringes on no more liberty than necessary").

Proposed supervised release special condition 1 should thus be stricken.

## CONCLUSION

Ms. Banegas-Barahona has been punished enough. She knows she will be removed to Honduras and the government can provide no reason to delay that removal for ten months. She respectfully requests this Court sentence her to credit for time served plus one day in jail. She also asks this Court to strike proposed supervised release condition 1.

Dated: March 20, 2025

Respectfully submitted,

MOEEL LAH FAKHOURY LLP

Hanni M. Fakhoury
Attorneys for Jessy Banegas-Barahona

DEFENDANT'S SENTENCING MEMORANDUM, MOTION FOR DOWNWARD VARIANCE AND PSR OBJECTIONS
*United States v. Banegas-Barahona*, 3:24-CR-00577-RFL-3

10