PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHARLES F. BISESTO (CABN 271353)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6405
FAX: (415) 436-7234
Charles.Bisesto@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JESSY BANEGAS-BARAHONA, <br><br> Defendant. | CASE NO. CR 24-00577-003 RFL <br><br> UNITED STATES' SENTENCING MEMORANDUM <br><br> Date: March 27, 2025 <br> Time: 2:00 p.m. <br> The Honorable Rita F. Lin |

## I. INTRODUCTION

In February of 2024, the Federal Bureau of Investigations (FBI) identified, and began investigating, a Bay Area resident who sold drugs in the Tenderloin District of San Francisco. Agents identified this drug dealer as Cristel Cruz-Banegas. In April of 2024, after Cruz-Banegas was arrested by the San Francisco Police Department, Jessy Banegas-Barahona (the defendant) and Cessia Ramirez-Barahona took over Cruz-Banegas' drug dealing activities. On April 22, 2024, Banegas-Barahona carried over a half a pound of fentanyl to a pre-arranged drug deal with an undercover law enforcement agent. That conduct led to Banegas-Barahona's Indictment and arrest in November of 2024.

On November 14, 2024, a four count Indictment was filed charging Banegas-Barahona, as well as Cristel Cruz-Banegas and Cessia Ramirez-Barahona, for her conduct in the April drug deal. Dkt. 1. The Indictment charged Banegas-Barahona in Count Three with a violation of 21 U.S.C. §§ 841(a)(1)

and (b)(1)(C) – Distribution of Fentanyl.  *Id*.  Banegas-Barahona was arrested on the morning of November 19, 2024.  During that arrest, agents found additional fentanyl and large quantities of cash inside her apartment.

On November 22, 2024, Banegas-Barahona was arraigned on the Indictment and entered a plea of not guilty.  Dkt. 12.  On November 26, 2024, after a detention hearing was held, Banegas-Barahona was ordered detained and remanded to the custody of the United States Marshall Service.  Dkt. 17.  The matter was assigned to District Court Judge Rita F. Lin for all purposes.

On January 10, 2025, pursuant to a plea agreement with the government, Banegas-Barahona pled guilty to Count Three in the Indictment.  Dkts. 36, 37.  Banegas-Barahona's guilty plea was entered pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure.  The matter was set for a sentencing date of March 27, 2025.

**II.     FACTS**

In February of 2024, the FBI began investigating a known San Francisco Bay Area narcotics dealer name "Daniela," who was later identified as Cristel Cruz-Banegas.  Presentence Investigation Report ("PSR") ¶ 8.  On February 29, 2024, an undercover Drug Enforcement Administration (DEA) agent purchased approximately 111.6 grams of fentanyl from Cruz-Banegas.  PSR ¶ 9.  On April 16, 2024, the San Francisco Police Department arrested Cruz-Banegas for dealing drugs in the Tenderloin District of San Francisco.  PSR ¶ 10.  Unaware of her arrest, the FBI and DEA reached out to Cruz-Banegas, on April 21, 2024, to conduct another drug deal.  PSR ¶ 12.  It was later determined that Cessia Ramirez-Barahona and Jessy Banegas-Barahona (the defendant) had taken over Cruz-Banegas' business as they responded to the undercover agent and arranged a fentanyl drug transaction to occur on April 22, 2024.  PSR ¶ 13.

On April 22, 2024, the undercover agent arranged the purchase of eight ounces of fentanyl at a price of $500 per ounce.  PSR ¶ 13.  When the undercover agent arrived at the pre-arranged meet location, Banegas-Barahona and Ramirez-Barahona arrived to conduct the drug deal.  *Id*.  As the two women approached the undercover's vehicle, Banegas-Barahona was holding a large black grocery bag containing fentanyl.  *Id*.  Ramirez-Barahona retrieved plastic baggies of fentanyl from this grocery bag and provided the baggies to the undercover agent.  *Id*.  In exchange, the undercover agent provided cash

for the acquired drugs. *Id*. In total, Banegas-Barahona and Ramirez-Barahona sold approximately 232 grams of fentanyl to the undercover agent. *Id*.

On November 19, 2024, agents served a federal search warrant on Banegas-Barahona's identified residence in San Leandro. PSR ¶ 14. Inside the home, agents detained Banegas-Barahona along with two other individuals. *Id.* A search of the residence led to the finding of over five pounds of fentanyl and over $126,000 in cash. *Id*.

As a result of her involvement in the April drug deal, Banegas-Barahona was indicted by a San Francisco Criminal Grand Jury on November 14, 2024. Dkt. 1.

### III. SENTENCING GUIDELINES CALCULATIONS

The government agrees with the Probation Office's calculation of the Sentencing Guidelines, which mirrors the parties' calculation as set forth in their plea agreement. *See* PSR ¶¶ 20-29; Dkt. 37 at ¶ 7. Although an assortment of drugs was found at Banegas-Barahona's residence when she was arrested, the government cannot definitely prove they belonged to Banegas-Barahona. *See* PSR ¶ 15. They therefore cannot be incorporated into the Guidelines calculation, which is predicated only on the fentanyl sold on April 22, 2024.

Of note, the government agrees with the finding of the Probation Office that Banegas-Barahona has no prior convictions and no criminal history points, placing her in Criminal History Category I and making her eligible for a two-level reduction as a zero-point offender. *See* PSR ¶¶ 33-34, 26. Of course, she also merits a three-level decrease for acceptance of responsibility, resulting in a total offense level of 19. A total offense level of 19, at Criminal History Category I, yields an advisory sentencing range of 30 to 37 months of imprisonment. *See* PSR ¶ 54; U.S.S.G. ch. 5, pt. A.

**A. Applicable Law**

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Section 3553 sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines

range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a); *Carty,* 520 F.3d at 991. The Guidelines should be the starting point and the initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States,* 551 U.S. 338, 350 (2007).

### B. Recommended Sentence

The government agrees that there are circumstances that merit consideration by this Court pursuant to 18 U.S.C. § 3553(b)(1). Namely, the government acknowledges the difficult circumstances Ms. Banegas-Barahona faced while being raised in Honduras, including the death of her maternal grandfather, and the challenging financial conditions that led her to seek opportunities in the United States. PSR ¶¶ 40-42. Banegas-Barahona also has no known criminal history and was involved in only one controlled delivery of fentanyl over the course of this investigation. For these reasons, the government agrees with Probation's determination that a below-Guidelines sentence is appropriate in this case.

Nevertheless, Ms. Banegas-Barahona's involvement with such a large quantity of fentanyl is quite troubling. In addition to assisting with the sale of over a half a pound of fentanyl, approximately five pounds of fentanyl was found inside her apartment at the time of her arrest. Ms. Banegas-Barahona's access to such a large quantity of this deadly drug suggests she was more than a mere bystander or low-level participant in the drug trade. As the Court is aware, fentanyl is an extremely potent and lethal substance, with even small amounts capable of causing an overdose. Ms. Banegas-Barahona's access to this lethal substance highlights just how much of a risk she posed to public safety.

With that said, what is most troubling is the choice that Ms. Banegas-Barahona made to engage in an illicit trade that inflicts such harm on the community. Ms. Banegas-Barahona had a *choice*, just like the many others who came from similar backgrounds who chose *not* to turn to criminality. In fact, unlike many defendants who come before this Court, Ms. Banegas-Barahona was and remains well supported by her partner and her family, and she found other opportunities to support herself financially. *See* PSR ¶¶ 43, 44, 49. And yet, despite all these positives, Ms. Banegas-Barahona made the choice to

sell fentanyl.  Her sentence must therefore serve the goals of deterrence, as an example for Ms. Banegas-Barahona, and anyone else who might consider making the same calculation, to show that crime simply does not pay.

The government's recommended sentence of 18 months in custody strikes an appropriate balance between punishing and deterring the defendant's criminal conduct and persuading the defendant to embrace her family's support and put her life on the right track.

### IV.     CONCLUSION

In full consideration of the goals of sentencing, the government respectfully requests that the Court sentence the defendant to 18 months of imprisonment, to be followed by three years of supervised release, and to include the conditions of supervised release recommended by the Probation Department.

DATED:  March 20, 2025

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

　　　/s/
CHARLES F. BISESTO
Assistant United States Attorney